1

2          IN THE UNITED STATES DISTRICT COURT FOR THE
                WESTERN DISTRICT OF MISSOURI
3                     WESTERN DIVISION

4
UNITED STATES OF AMERICA,      ) Case No. 11-00223-10-CR-W-BCW
5                              )
          Plaintiff,           ) Kansas City, Missouri
6                              ) November 26, 2013
v.                             )
7                              )
JEFFREY A. OLSON,              )
8                              )
          Defendant.           )
9    _____)

10

          TRANSCRIPT OF HEARING ON CHANGE OF PLEA
11         BEFORE THE HONORABLE SARAH W. HAYS
              UNITED STATES MAGISTRATE JUDGE
12

13   APPEARANCES:

14   For the Plaintiff:         Daniel M. Nelson, Esq.
                                Assistant United States Attorney
15                              400 E. Ninth St., Ste. 5510
                                Kansas City, MO  64106
16                              (816) 426-3122

17   For the Defendant:         John G. Gromowsky, Esq.
                                1100 Main, Ste. 2800
18                              Kansas City, MO  64105
                                (816) 842-1130
19
     Court Audio Operator:      Ms. Lori Carr
20
     Transcribed by:            Rapid Transcript
21                              Lissa C. Whittaker
                                1001 West 65th Street
22                              Kansas City, MO  64113
                                (816) 914-3613
23

24
     Proceedings recorded by electronic sound recording, transcript
25   produced by transcription service.

1    (Court in Session at 4:02 p.m.)

2    THE COURT:  We're here on the case of *United States vs.*

3 *Jeffrey Olson*, Case No. 11-223.  If counsel would state their

4 appearance for the record.

5    MR. NELSON:  May it please the Court?  Dan Nelson for

6 the United States.

7    MR. GROMOWSKY:  Good afternoon, Your Honor.  John

8 Gromowsky for Mr. Olson who appears in person.

9    THE COURT:  All right.  We're here today -- we were --

10 we had an earlier proceeding but are back on the record because

11 it's my understanding that Mr. Olson wants to change his plea

12 from not guilty to guilty.  Judge Wimes had already left for the

13 afternoon.  And although he offered to come back, it was going to

14 take him more than an hour or so to get back down here, so we

15 thought we would just proceed this way.  I will be taking the

16 plea by Report and Recommendation.  So, after today, since your

17 trial judge is Judge Wimes, we'll make a copy of the transcript

18 and you'll have 14 days to make any objections if you all of a

19 sudden decided that something hadn't gone according to plan here

20 this afternoon.  So, it's my understanding that the defendant

21 wants to change his plea.  I've not had a chance to look at the

22 Plea Agreement and at some point I'll have you go into more

23 detail, but what count or counts is the defendant going to plead

24 to?

25    MR. NELSON:  Your Honor, at the defendant's request, the

1  United States is allowing him to plead to Count Forty-One, which,

2  in the Plea Agreement contemplates and the Government has agreed

3  that in exchange, in Paragraph 8, will dismiss Count One at the

4  time of sentencing.

5          THE COURT:  All right.  So, that's the first thing I

6  wanted you to be aware of, Mr. Olson, is what count of the

7  Indictment we're here to talk about.  And Count Forty-One is, my

8  recollection is by looking at the Indictment, involves an

9  allegation of filing false claims for tax refunds and carries a

10  penalty of not more than five years in prison, not more than a

11  $250,000 fine, not more than three years supervised release and

12  $100 mandatory special assessment.  Under the Indictment, there

13  is also the possibility of an order of restitution.  Is that

14  addressed in the Plea Agreement, Mr. Nelson?

15          MR. NELSON:  I believe it is addressed in the Plea

16  Agreement.

17          MR. GROMOWSKY:  Your Honor, a specific dollar amount is

18  not addressed but it does discuss the possibility of restitution

19  and how that will be paid.

20          THE COURT:  All right.  Well, I wanted you to be aware

21  of that.  It's in the Indictment and when we come to the summary

22  of the Plea Agreement, the parties can go into that as well.  So,

23  those -- that is the penalty for Count Forty-One which is the

24  count that we are here to talk about.  At this point, if you

25  could put the defendant under oath.

1          JEFFREY A. OLSON, DEFENDANT, SWORN

2          THE COURT:  And you can just remain seated there at

3  counsel table and you'll just need to make sure that you speak

4  into the microphone.

5          MR. OLSON:  Sure.

6          THE COURT:  Mr. Olson, how old are you?

7          MR. OLSON:  I am 43.

8          THE COURT:  And what's your educational background?

9          MR. OLSON:  High school graduate with some college.

10          THE COURT:  And you can read, write and understand

11  English?

12          MR. OLSON:  Yes.

13          THE COURT:  And you've had a chance to review the Plea

14  Agreement that we're here to talk about today, is that correct?

15          MR. OLSON:  Yes.

16          THE COURT:  And Mr. Gromowsky, is this Plea Agreement

17  one that had been provided to you some time ago?

18          MR. GROMOWSKY:  Your Honor, with regard to the specific

19  language of this one, primarily the Factual Basis, Paragraph 3,

20  and then the Sentencing Guideline range contemplated in Paragraph

21  10(c) and (d), those are different than what we've had in the

22  past.  But for months we have had several different drafts of

23  plea agreements that had the standard contract language in them.

24          THE COURT:  Okay.

25          MR. GROMOWSKY:  And then as recently as, I think we

1   decided it was October, we had a copy of an agreement that stated
2   a plea to the Count Forty-One as opposed to Count One or Counts
3   One and Forty-One. So, we have had plenty of time to look at
4   this particular agreement.
5            THE COURT: All right. And so you've read those past
6   agreements, is that correct, Mr. Olson?
7            MR. OLSON: Yes, that's correct.
8            THE COURT: And you understand that what difference
9   there is in the Paragraph 3 and (c) and (d) of the Sentencing
10  Guideline range?
11           MR. OLSON: Yes, I do.
12           THE COURT: And have you taken any kind of prescription
13  medication in the last 24 hours?
14           MR. OLSON: No.
15           THE COURT: Have you taken any over-the-counter
16  medication in the last 24 hours?
17           MR. OLSON: No.
18           THE COURT: Have you had any alcohol within the last 24
19  hours?
20           MR. OLSON: Yes. But not to any extent that would
21  impair me.
22           THE COURT: All right. And have you had any alcohol
23  today or was that yesterday?
24           MR. OLSON: That was yesterday.
25           THE COURT: All right. And you're not under the

1    influence of alcohol today, haven't had any --

2           MR. OLSON:  No.

3           THE COURT:  And, really, the reason I'm asking these

4    questions is I want to make sure that you believe you are in a

5    position today to come to court and make decisions that are in

6    your own best interest.  Is there anything about today or your

7    circumstances today that you think would impair your ability to

8    make good decisions on your own behalf?

9           MR. OLSON:  No.

10          THE COURT:  And have you ever been diagnosed with any

11   kind of mental illness or disease?

12          MR. OLSON:  No.

13          THE COURT:  And do you believe you're competent to come

14   to court and decide how to proceed?

15          MR. OLSON:  Yes.

16          THE COURT:  And Mr. Gromowsky, you've been working with

17   this defendant since 2011, do you believe he's competent to come

18   to court today and decide how to plea?

19          MR. GROMOWSKY:  Absolutely, Your Honor.

20          THE COURT:  All right.  And I'm sure that your attorney

21   has indicated to you that you have the right to continue to plead

22   not guilty and go to trial.  Do you understand that?

23          MR. OLSON:  Yes.

24          THE COURT:  And we talked a little bit earlier today.

25   Your trial is currently set for January 6th and Mr. Gromowsky

would be representing you at trial. You understand that?

MR. OLSON: Yes.

THE COURT: If you come to court today and decide to change your plea from not guilty to guilty, there are a number of constitutional rights that you'll be giving up and I want to go through those with you. By pleading not guilty, you have the right to go trial before a jury of 12 people. Do you understand that?

MR. OLSON: Yes.

THE COURT: And you'd be represented by counsel throughout the course of that trial at every stage of that proceeding, just as you've been represented at the pretrial proceedings. Do you understand that?

MR. OLSON: Yes.

THE COURT: The jury would be told that you are presumed innocent and that it would be the prosecutor's burden to prove your guilt beyond a reasonable doubt for any charge that they were going to trial on. Do you understand that?

MR. OLSON: Yes.

THE COURT: In order to try to meet that burden, the Government would call witnesses and your attorney would have the right to cross-examine any of those witnesses. Do you understand that?

MR. OLSON: Yes.

THE COURT: You are not required to put on a defense,

but you certainly would have that opportunity.  And if there were
witnesses that you wanted the jury to hear from, then I'd issue
subpoenas for them to make sure they came to court.  Do you
understand that?

MR. OLSON:  Yes.

THE COURT:  And you could not be compelled to testify
against yourself.  The Government could not call you to testify.
But if you chose to testify on your own behalf, you could.  Do
you understand that?

MR. OLSON:  Yes.

THE COURT:  And at the end of the case, the jury verdict
would need to be unanimous or you could not be convicted.  Do you
understand that?

MR. OLSON:  Yes.

THE COURT:  And then if they jury reached a result that
you did not agree with, you would have the right to appeal to the
Eighth Circuit.  Do you understand that?

MR. OLSON:  Yes.

THE COURT:  If you choose to plead guilty today, then
you basically give up these rights.  While you still have the
right to representation by counsel, basically you'd relieve the
Government of the burden of going to trial before a jury of 12
people and proving your guilt beyond a reasonable doubt.
Likewise, today here in court, you would have to indicate what it
is you did that makes you guilty of Count Forty-One.  Do you

1  understand that?

2      MR. OLSON:  Yes.

3      THE COURT:  Now, it's my understanding, and we've talked

4  about it a little bit, that there is a Plea Agreement that the

5  parties have been working on for some time and then there had

6  been some changes made to it today.  On behalf of the Government,

7  can you basically summarize the key provisions of the Plea

8  Agreement?

9      MR. NELSON:  Yes, Your Honor.  The Plea Agreement is to

10 Count Forty-One.  The Government, as described before, has agreed

11 to dismissed Count One in exchange for Mr. Olson's timely plea of

12 guilty.  Of note, the factual basis for the guilty plea was

13 altered today with substantial input from Mr. Olson and Mr.

14 Gromowsky.  Basically the facts were just narrowed down.  It's

15 not inconsistent with the previous plea agreement, but the

16 factual basis is shorter and more focused on solely the activity

17 changed in Count Forty-One.  So that Paragraph 3 summarizes the

18 conduct that is also charged in the Government's Indictment, and

19 that's what Mr. Olson is admitting to here today, which is

20 essentially submitting false OID claims that he had withheld

21 taxes and as a result, he received $171,806 in exchange for his

22 false representations on his 2007 Form 1040 return, and Forms

23 1099 which were attached.  The joint return was submitted October

24 13, 2008, and it was received here in Kansas City, Missouri,

25 where it was processed at the IRS Service Center.  The Plea

Agreement also describes how the Olsons took the $171,000 out
beginning in October 2008, and spent the proceeds.  Approximately
a year later when the IRS was attempting to collect the money
back, Mr. Olson admits that he sent a response claiming that it
was accurate and challenging the IRS to provide proof of anything
incorrect in the return.  Mr. Olson, through his plea today, now
admits that he had seen fraud warnings on the IRS website and
still chose to respond to the IRS with the affidavit.
Specifically through the plea he admits that, in fact, the
representations of the income that he received were not -- was
not received from those financial institutions.  This Plea
Agreement lists the penalties.  It lists the -- which is a
benefit to Mr. Olson because the statutory range of punishment
will be limited now to five years, where the 286 count
contemplated in Count One would have permitted ten years.  And
then this sets out the penalties which the Court has already
advised the defendant.  It lists the sentencing procedures.  This
is a Rule 11(c)(1)(B) Plea Agreement, so it is not binding on the
court and there is no binding recommendation.  In Paragraph 8,
the Government has agreed to dismiss Count One.  In Paragraph 10,
the parties have agreed on certain Guidelines applications with
the stipulation and understanding that this will not be binding
on the court.  However, the parties have taken certain discreet
positions with respect to the Guidelines issues, including that
the loss amount applicable to Mr. Olson is $171,806, which

results in a Base Offense Level of 16, under 2T1.1 of the
Guidelines.  That's what the parties anticipate where he will be
but the Plea Agreement makes it clear that that is not binding on
the court, and that's only an estimation.  The parties agree to
leave open the issue of whether a two-level enhancement is
applicable for sophisticated means.  The Government has agreed of
benefit to the defendant to agree to and request a three-level
reduction pursuant to 3E1.1(b) of the Sentencing Guidelines for
full acceptance of responsibility.  That is a benefit to the
defendant, particularly given the late nature of the plea
relative to the other defendants and the looming trial deadline
and the substantial efforts the Government has already expended
to prepare for his trial.  There are certain financial
obligations, and the Government reserves certain rights in 13 and
14.  There's a waiver of constitutional rights of import in
Paragraph 15, on page 11, including the defendant is waiving the
right to plead not guilty -- to persist in a plea of not guilty
and to a trial.  Of particular import that the Government should
highlight is Paragraph 16 on page 12 in which the defendant
acknowledges, understands and agrees that by pleading guilty
pursuant to this Plea Agreement, he waives his right to appeal or
collaterally attack a finding of guilt following the acceptance
of this Plea Agreement, except on grounds of, one, ineffective
assistance of counsel, or, two, prosecutorial misconduct.  And he
expressly waives the right to appeal his sentence directly or

1 collaterally on any grounds except claims of ineffective

2 assistance of counsel, prosecutorial misconduct, or an illegal

3 sentence. He waives his right to FOIA requests. And there is

4 certain other boilerplate language that's been in the pleas that

5 he's had for over a year in the remaining paragraphs. But those

6 are the main points of the plea, Your Honor.

7       THE COURT: Mr. Gromowsky, anything you want to add in

8 terms of the central elements of the Plea Agreement?

9       MR. GROMOWSKY: Your Honor, only that the standardized

10 language regarding sentencing recommendations from the parties

11 has been slightly modified in the back of Paragraph 10 which

12 would allow the defendant to ask for a departure or a variance

13 down from the Guidelines range. And then the Government, of

14 course, is permitted then to seek an upward departure or a

15 variance from the Guidelines range if they so chose to do so.

16       THE COURT: All right. Now, I don't have a signed copy.

17 Has the defendant actually signed a copy of the Plea Agreement?

18 All right. So, I'm looking now at the document that has

19 signatures of counsel. Is that your signature on the back page,

20 Mr. Olson?

21       MR. OLSON: Yes.

22       THE COURT: And did you voluntarily sign that document

23 earlier today?

24       MR. OLSON: Yes.

25       THE COURT: And did you have a chance to go over this

1  particular version of the Plea Agreement with your attorney

2  before you signed it?

3      MR. OLSON:  Yes.

4      THE COURT:  And you understand that the Plea Agreement

5  is between you and the Government, that the court is not a part

6  to that agreement?

7      MR. OLSON:  Yes.

8      THE COURT:  And even though we're here to talk about it

9  today, there are certain things that are estimated in there that

10  wouldn't be binding on the court.  Do you understand that?

11      MR. OLSON:  Yes.

12      THE COURT:  And have you had a chance to talk to your

13  attorney about the Sentencing Guidelines?

14      MR. OLSON:  Yes.

15      THE COURT:  And the Sentencing Guidelines are advisory

16  to the court, so the court isn't bound by them.  As long as the

17  court imposes a reasonable sentence within that statutory maximum

18  under this agreement, you would not have the right to complain.

19  Do you understand that?

20      MR. OLSON:  Yes.

21      THE COURT:  And even though you've estimated -- you and

22  the Government have estimated some potential Guideline ranges,

23  you understand that that's just an estimate and it's not binding

24  on Judge Wimes, who will be your sentencing judge.  Do you

25  understand that?

1          MR. OLSON:  Yes.

2          THE COURT:  Has anyone promised you what sentence Judge

3     Wimes will ultimately impose?

4          MR. OLSON:  No.

5          THE COURT:  And do you understand that once you plead

6     guilty, at the time of sentencing, if you don't like the sentence

7     that's imposed, you won't have a right to withdraw your guilty

8     plea just because don't agree with the sentence.  Do you

9     understand that?

10         MR. OLSON:  Yes.

11         THE COURT:  And, Mr. Gromowsky, if you could just

12    outline for the record -- I think we've touched on it a little

13    bit -- but the reasons that your client decided to enter into

14    this plea?

15         MR. GROMOWSKY:  Yes, Your Honor.  As we discussed at the

16    earlier hearing and I'll repeat here, from the outset of this

17    case, Mr. Olson and his wife, who is a co-defendant in the case,

18    sought to resolve the case in a manner in which at least one of

19    them had the potential to remain at the home and continue to

20    raise their children, and so that was what started the ball

21    rolling.  As to the particulars of this case, or this plea that's

22    now before the Court, some of the benefits include the fact that

23    we'll receive the three-point reduction for pleading guilty, even

24    as was stated by the Government, we're late to the game with

25    regard to actually executing the plea.  Additionally, he will be

pleading guilty to the lessor count in Count Forty-One, as
opposed to the conspiracy count.  That does a couple of things,
one of which was mentioned by Mr. Nelson in that the statutory
maximum sentence is less in Forty-One than it was in One.  The
other thing it does, it has the potential for lowering the
Sentencing Guideline range, which is a benefit to my client
because if he was charged with the conspiracy amount, obviously,
dollar amounts could become astronomical in a case like this.
And so he's not going to have to necessarily face the full brunt
of the Government's prosecution against him.  And then, of
course, the standard things such as regard to plea agreements, it
provides my client peace of mind to know that the resolution of
this will be done.  Also in that regard, but specifically his
wife has, as a cooperator as part of this group thing we've done,
is required to testify against Mr. Olson if the case had
proceeded to trial.  So that obviously is putting a lot of stress
on himself and his family, and so by avoiding that outcome, that
is also of benefit to my client.

        THE COURT:  All right.  Thank you.  Mr. Olson, how do
you wish to plead to Count Forty-One of the Indictment?

        MR. OLSON:  Guilty.

        THE COURT:  Now, have you had sufficient time to confer
with Mr. Gromowsky about this decision?

        MR. OLSON:  Yes.

        THE COURT:  And I know we've had some discussion earlier

1 today, but are you satisfied with the representation you've

2 received from Mr. Gromowsky?

3          MR. OLSON:  Yes.

4          THE COURT:  And earlier today you actually made a

5 decision to proceed to trial with Mr. Gromowsky as your attorney,

6 is that correct?

7          MR. OLSON:  Yes.

8          THE COURT:  And we talked a little bit earlier about

9 this.  He's represented you since basically around September of

10 2011, is that correct?

11          MR. OLSON:  That's correct.

12          THE COURT:  And you've had a chance to go over discovery

13 with him?

14          MR. OLSON:  Not personally with him.  I have seen the

15 discovery, yes.

16          THE COURT:  You've seen the discovery in the case.  He's

17 been available if you chose to call him up.  I know you weren't

18 here in town but you could have called him whenever you needed to

19 to talk to him about the case?

20          MR. OLSON:  Yes.

21          THE COURT:  And so, at this point, you don't have any

22 complaints about his representation, is that fair to say?

23          MR. OLSON:  Yes, that's correct.

24          THE COURT:  All right.  Mr. Nelson, if you could outline

25 the evidence that you'd present at trial with respect to Count

1  Forty-One?

2          MR. NELSON:  Yes, Your Honor.  I summarized this a

3  little bit before --

4          THE COURT:  Yes.

5          MR. NELSON:  -- when I went over the key points, so I

6  won't read word for word Paragraph 3 of the Factual Basis.  But

7  Paragraph 3 is on pages 2 to 3 of the Indictment.  We've

8  discussed this extensively in the past and today with the input

9  of the defendant specifically.  He has approved all the facts on

10 pages 2 and 3.  We believe they'd make up all the elements of

11 this crime of submitting a false claim and essentially the

12 defendant admits to Count Forty-One of the Indictment that on

13 October 13, 2008, Jeff and his wife, Karen Olson, submitted a

14 2007 joint income tax return including Forms 1099-OID.  The Forms

15 1099-OID and 1040 return itself listed a large amount of income

16 based on supposed OID income, of which the Olsons represented a

17 large amount of taxes had already been withheld and paid.  In

18 actuality, as Jeff Olson well knew at the time the return was

19 filed, the Olsons did not receive any interest income as claimed

20 on their 2007 Schedule B and the Olson did not receive any Forms

21 1099-OID or Forms 1099-A for any of the financial institutions

22 listed on their Schedule B.  The Olsons' return was processed

23 through the Kansas City, Missouri, IRS Service Center in the

24 Western District of Missouri.  As a result of the claim, they

25 received a refund of $171,806 which Mr. Olson admits that they

1  then spent on personal expenditures.  He says that they had spent

2  all the money by the time the IRS contacted them a year later.

3  Mr. Olson admits that he wrote a response to the IRS about the

4  claim challenging the IRS essentially to provide proof of

5  anything false on the return and Mr. Olson now admits that he had

6  seen fraud warnings on the IRS website prior to sending that

7  correspondence.  And he did admit when IRS-CI agents interviewed

8  him that the Olsons had submitted that claim for $171,806.

9         THE COURT:  All right.  Mr. Olson, do you have a copy of

10  the Plea Agreement there in front of you?

11         MR. OLSON:  Yes, I do.

12         THE COURT:  And basically, Mr. Nelson has been reading

13  the Factual Basis for the plea which begins on page 2 and ends at

14  the top page 3.  Have you had a chance to read through that

15  Factual Basis for the plea?

16         MR. OLSON:  Yes, I have.

17         THE COURT:  And you'd had a chance to have some input on

18  what actually went into that?

19         MR. OLSON:  I have.

20         THE COURT:  And do you agree that the statements that

21  Mr. Nelson just made and the Factual Basis for the plea is the

22  activity that you actually engaged in?

23         MR. OLSON:  Yes.

24         THE COURT:  And you admit that if the case were to go to

25  trial, Mr. Nelson would be able to prove these facts as set forth

1    in Paragraph 3 at pages 2 and 3 of the Plea Agreement?

2              MR. OLSON:  Yes.

3              THE COURT:  Mr. Nelson, is there anything other inquiry

4    that you'd like me to make?

5              MR. NELSON:  No, Your Honor.

6              THE COURT:  All right.  Anything else that either side

7    feels we need to cover as part of the plea here today?

8              MR. NELSON:  Not from the Government, Your Honor.

9              MR. GROMOWSKY:  No, Your Honor.

10             THE COURT:  Then, Mr. Olson, I will make a Report and

11   Recommendation to Judge Wimes recommending that he accept your

12   plea on the basis that you're competent to proceed, that you

13   understand your rights, and that you have voluntarily entered

14   into this Plea Agreement, that there's a factual basis for the

15   plea, and that beyond a reasonable doubt, you're guilty of the

16   crime charged.  You will continue on the bond that you've been on

17   pending sentencing.  Because we did this at the last minute, we

18   didn't get a chance to notify Probation to be up here, but I am

19   ordering that a Presentence Report be prepared, so someone will

20   be contacting you to get information.  Once that report's

21   finalized, or a draft is prepared, it'll be sent to counsel.

22   You'll have an opportunity to have input before the final

23   document is prepared.  If there are things you don't agree with

24   at the time of sentencing, you'll have an opportunity to address

25   that or present any evidence as well.  And, so yet this

1   afternoon, we'll let Probation know that they need to get working

2   on a Presentence.  And you'll have to work with your client to,

3   you know, make arrangements for him to talk to them.

4           MR. GROMOWSKY:  Yes, Your Honor.

5           THE COURT:  All right.  Anything else?

6           MR. NELSON:  No, Your Honor, thank you.

7           MR. GROMOWSKY:  No, Your Honor, thank  you.

8           THE COURT:  All right.  We'll be in recess and I hope

9   you catch your flight, Mr. Olson.

10          MR. OLSON:  Thank you.

11                  (Court Adjourned at 4:27 p.m.)

1

2

3

4

5

6          I certify that the foregoing is a correct transcript
from the electronic sound recording of the proceeding in the
7    above-entitled matter.

8

9    /s/ Lissa C. Whittaker          December 4, 2013
     Signature of transcriber              Date

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25